# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| *IN RE MUSHROOMS ANTITRUST LITIGATION* | **Master File No. 06-0620** |
| **THIS DOCUMENT RELATES TO:** **PUBLIX SUPER MARKETS, INC.,** **Plaintiff,** **v.** **EASTERN MUSHROOM MARKETING COOPERATIVE, INC.,** **ROBERT A. FERRANTO JR. t/a BELLA MUSHROOM FARMS,** **BROWNSTONE FARMS, INC. and/or BROWNSTONE MUSHROOM FARM,** **TO-JO FRESH MUSHROOMS, INC.** **CARDILE MUSHROOMS, INC.,** **CARDILE BROS. MUSHROOMS PACKAGING, INC.,** **COUNTRY FRESH MUSHROOM CO.,** **FOREST MUSHROOMS, INC.,** **FRANKLIN FARMS, INC.,** **GINO GASPARI & SONS, INC., GASPARI MUSHROOM CO., INC. and/or GASPARI BROS. INC.,** **GIORGIO MUSHROOM CO. and/or GIORGIO FOODS, INC.,** **KAOLIN MUSHROOM FARMS, INC.,** **SOUTH MILL MUSHROOM SALES, INC.** | **JURY TRIAL DEMANDED** **CIVIL ACTION NO. 06-cv-00932-TON** |

**LRP-M MUSHROOMS LLC, LRP MUSHROOMS, INC., and/or LEONE PIZZINI & SON, INC.,**

**MODERN MUSHROOM FARMS, INC.,**

**SHER-ROCKEE MUSHROOM FARM, LLC,**

**C & C CARRIAGE MUSHROOM CO.**

**OAKSHIRE MUSHROOM FARM INC.,**

**PHILLIPS MUSHROOM FARMS, INC.,**

**HARVEST FRESH FARMS, INC.,**

**LOUIS MARSON, JR., INC.,**

**MARIO CUTONE MUSHROOM CO. INC.,**

**M.D. BASCIANI & SONS, INC.,**

**MONTEREY MUSHROOMS, INC.,**

**MASHA & TOTO, INC. t/a M&T MUSHROOMS,**

**W & P MUSHROOM INC.,**

**MUSHROOM ALLIANCE, INC.,**

**CREEKSIDE MUSHROOMS, LTD.,**

**KITCHEN PRIDE MUSHROOMS, INC.,**

**JM FARMS,**

**UNITED MUSHROOM FARMS COOPERATIVE, INC. and/or UNITED MUSHROOM FARMS COOP, INC.,**

**JOHN PIA,**

| MICHAEL PIA, and | |
| JOHN DOES 1-100, | |
| **Defendants.** | |

## PUBLIX SECOND AMENDED COMPLAINT AT LAW

Plaintiff Publix Super Markets, Inc. ("Publix") brings this antitrust action and alleges as follows based upon personal knowledge as to matters relating to themselves and upon the investigation of their counsel and information and belief as to all other matters:

## NATURE OF THE CASE

1.     This action concerns Publix's purchases of agaricus mushrooms in the United States directly from Defendants or their subsidiaries from January 1, 2001 through such time in the future as to the effects of Defendants' illegal conduct have ceased ("the Relevant Time Period"). During all or part of the Relevant Time Period, Defendants participated in a conspiracy in unreasonable restraint of trade to prevent, forestall and restrict competition from independent mushroom producers by, *inter alia*, purchasing or leasing mushroom farms and shutting them down or otherwise preventing mushrooms from being grown on the property. As a result of this illegal conduct, Publix has paid and/or continues to pay more for agaricus mushrooms than it would have paid had the Defendants not agreed to unlawfully restrain competition.

## PARTIES

2.     Plaintiff Publix Super Markets, Inc. is a corporation organized under the laws of the State of Florida, with its principal place of business in Lakeland, Florida. During the Relevant Time Period, Publix purchased agaricus mushrooms directly from one or more Defendants.

3

3.      Defendant Eastern Mushroom Marketing Cooperative, Inc. (the "EMMC") began operations in January 2001 and is the largest mushroom cooperative in the United States. The EMMC is incorporated in the Commonwealth of Pennsylvania and is headquartered in Kennett Square, Pennsylvania. The EMMC is made up of entities that grow, buy, package, and ship mushrooms to retail and food service outlets across the United States. During the 2001-2002 growing season, the EMMC controlled more than 500 million pounds of mushrooms which are valued in excess of $425 million. On information and belief based on the reasonable investigation of their counsel, Publix has identified the members of the EMMC described below. During the Relevant Period, the members of the EMMC controlled over 60 percent of all agaricus mushrooms grown in the United States and approximately 90 percent of all agaricus mushrooms grown in the eastern United States. The EMMC sets the minimum prices at which its members sell their mushrooms to customers in various geographic regions throughout the United States and publishes those prices regularly.

4.      Defendant Robert A. Ferranto Jr. t/a Bella Mushroom Farms ("Bella") is an individual with a business address of R.R. 1, Box 165B, Landenberg, Pennsylvania 19350. Bella was an EMMC member during the Relevant Time Period and participated in the unlawful acts alleged herein.

5.      Defendant Brownstone Farms, Inc. and/or Brownstone Mushroom Farm ("Brownstone") is a Pennsylvania corporation with a principal place of business at 1501 Hanover Pike, Littlestown, Pennsylvania 17340. Brownstone was an EMMC member during the Relevant Time Period and participated in the unlawful acts alleged herein.

6.      Defendant To-Jo Fresh Mushrooms, Inc. ("To-Jo") is a Pennsylvania corporation that is related and controlled by Brownstone. To-Jo distributes mushrooms grown by

4

Brownstone.  Upon information and belief, To-Jo participated in the unlawful acts alleged herein.

7.      Defendants Cardile Mushrooms, Inc. and Cardile Brothers Mushroom Packaging, Inc. (collectively "Cardile") are owned and operated by Charles E. Cardile, Jr. and Michael P. Cardile.  The Cardile Defendants collectively grow, package, sell and distribute mushrooms with their principal place of business in Avondale, Pennsylvania.  Cardile was an EMMC member during the Relevant Time Period and participated in the unlawful acts alleged herein.

8.      Defendant Country Fresh Mushroom Co. ("Country Fresh") is a Pennsylvania corporation with a principal place of business in Avondale, Pennsylvania.  Country Fresh was an EMMC member during the Relevant Time Period and participated in the unlawful acts alleged herein.

9.      Defendant Forest Mushrooms, Inc. ("Forest") is a Minnesota corporation with a principal place of business in St. Joseph, Minnesota.  Forest was an EMMC member during the Relevant Time Period and participated in the unlawful acts alleged herein.

10.      Defendant Franklin Farms, Inc. ("Franklin") is a mushroom grower with a principal place of business in North Franklin, Connecticut.  Franklin is the nation's largest grower and harvester of certified organic mushrooms and one of the largest agricultural businesses in New England.  Franklin was an EMMC member during the Relevant Time Period and participated in the unlawful acts alleged herein.

11.      Defendants Gino Gaspari & Sons, Inc., Gaspari Mushroom Co., Inc. and Gaspari Bros., Inc. ("Gaspari") are Pennsylvania corporations with their principal place of business in Temple, Pennsylvania.  Gaspari was an EMMC member during the Relevant Time Period and participated in the unlawful acts alleged herein.

12.     Defendants Giorgi Mushroom Co. and/or Giorgio Foods, Inc. ("Giorgio") are Pennsylvania corporations with their principal place of business in Temple, Pennsylvania. Giorgio was an EMMC member during the Relevant Time Period and participated in the unlawful acts alleged herein.

13.     Defendant Kaolin Mushroom Farms, Inc. ("Kaolin") is a Pennsylvania corporation with a principal place of business in Kennett Square, Pennsylvania. Kaolin was an EMMC member during the Relevant Time Period and operates one of the largest mushroom farms in Pennsylvania and transacts business in this district. During the Relevant Time Period, Kaolin sold mushrooms to retail, wholesale, food service and commercial processors under the South Mill label. Kaolin participated in the unlawful acts alleged herein.

14.     Defendant South Mill Mushroom Sales, Inc. ("South Mill") is located in Kennett Square, Pennsylvania and is related through common ownership to Kaolin. On information and belief, South Mill participated with Kaolin in the unlawful acts alleged herein.

15.     Defendants LRP-M Mushrooms, LLC, LRP Mushrooms, Inc. and/or Leone Pizzini and Son, Inc. ("LRP") are all related Pennsylvania entities with their principal place of business in Avondale, Pennsylvania. On information and belief, at least one of the LRP Defendants was an EMMC member during the Relevant Time Period and all of the LRP Defendants participated in the unlawful acts alleged herein.

16.     Defendant Modern Mushroom Farms, Inc. ("Modern") is a mushroom grower with a principal place of business in New Garden Township, Pennsylvania. Modern grows and sells agaricus mushrooms under the Modern Mushroom Farms label. Modern was an EMMC member during the Relevant Time Period and participated in the unlawful acts alleged herein.

6

17.     Defendant Sher-Rockee Mushroom Farms, LLC is a mushroom grower located in Lincoln University, Pennsylvania and is related through common ownership to Modern.  On information and belief, it participated with Modern in the unlawful acts alleged herein.

18.     Defendant C & C Carriage Mushroom Co. is located in Toughkenamon, Pennsylvania and is related through common ownership to Modern.  On information and belief, it participated with Modern in the unlawful acts alleged herein.

19.     Defendant Oakshire Mushroom Farm, Inc. ("Oakshire") is a Pennsylvania corporation with a principal place of business in Kennett Square, Pennsylvania.  Oakshire was an EMMC member during the Relevant Time Period and participated in the unlawful acts alleged herein.

20.     Defendant Phillips Mushroom Farms, L.P. ("Phillips") is a mushroom grower with a principal place of business in Kennett Square, Pennsylvania.  Phillips was an EMMC member during the Relevant Time Period. As of December 2002, Phillips was the largest supplier of specialty mushrooms in the United States selling 35 million pounds of mushrooms annually.  Phillips distributed mushrooms throughout the eastern United States and participated in the unlawful acts alleged herein.

21.     Defendant Harvest Fresh Farms, Inc. ("Harvest") is a Pennsylvania corporation with a principal place of business in Shoemakersville, Pennsylvania.  Harvest was an EMMC member during the Relevant Time Period and participated in the unlawful acts alleged herein.

22.     Defendant Louis Marson, Jr., Inc. ("Marson") is a Pennsylvania corporation with a principal place of business at 459 Greenwood Road, Kennett Square, Pennsylvania 19348. Marson was an EMMC member during the Relevant Time Period and participated in the unlawful acts alleged herein.

23.     Defendant Mario Cutone Mushroom Co., Inc. ("Cutone") is a Pennsylvania corporation with a principal place of business in Avondale, Pennsylvania. Cutone was an EMMC member during the Relevant Time Period and participated in the unlawful acts alleged herein.

24.     Defendant M.D. Basciani & Sons., Inc. ("Basciani") is a Pennsylvania corporation with a principal place of business at 8874 Gap Newport Pike, Avondale, Pennsylvania 19311. Basciani was an EMMC member during the Relevant Time Period and participated in the unlawful acts alleged herein.

25.     Defendant Monterey Mushrooms, Inc. ("Monterey") has a principal place of business in Watsonville, California. Monterey was an EMMC member during the Relevant Time Period and participated in the unlawful acts alleged herein. Monterey is a national grower and shipper of mushrooms with a full line of fresh domestic and specialty mushrooms which it sells to supermarkets, foodservice and ingredient manufacture operations, and for preparation of processed, canned, and frozen mushroom products. Monterey is the largest grower/shipper and marketer of fresh mushrooms in the United States with farms in Florida, Illinois, California, Texas, Tennessee, and Pennsylvania. In addition, Monterey also sells processed mushrooms that are canned, frozen and glass jarred, which it processes at facilities and plants in Missouri, California, Pennsylvania, Indiana and Texas.

26.     Defendant Masha & Toto, Inc. t/a M & T Mushrooms ("M & T") is a Pennsylvania corporation with a principal place of business at 519 Hillendale Road, Avondale, Pennsylvania 19311. M & T was an EMMC member during the Relevant Time Period and participated in the unlawful acts alleged herein.

8

27.     Defendant W & P Mushroom, Inc. ("W & P") is a Pennsylvania corporation with its principal place of business in Avondale, Pennsylvania.  W & P was an EMMC member during the Relevant Time Period and participated in the unlawful acts alleged herein.

28.     Defendant Mushroom Alliance, Inc. ("Mushroom Alliance") has a business address at 28 Seascape Village, Aptos, California 95003.  Mushroom Alliance was an EMMC member during the Relevant Time Period and participated in the unlawful acts alleged herein.

29.     Defendant Creekside Mushrooms, Ltd. ("Creekside") is a Pennsylvania corporation with a principal place of business in Worthington, Pennsylvania.  Creekside was a member of Defendant Mushroom Alliance during the Relevant Time Period and participated in the unlawful acts alleged herein.

30.     Defendant Kitchen Pride Mushrooms, Inc. ("Kitchen Pride") is a corporation with an address of P.O. Box 585, Gonzalez, Texas 78629.  Kitchen Pride was an EMMC member during the Relevant Time Period and participated in the unlawful acts alleged herein.

31.     Defendant JM Farms is a member of the Mushroom Alliance.  Its principal place of business is in Miami, Oklahoma.  Upon information and belief, JM Farms participated in the unlawful acts alleged herein.

32.     Defendant United Mushroom Farms Cooperative, Inc. and/or United Mushroom Farms CoOp, Inc. ("United") is a Pennsylvania corporation with a principal place of business at 101 New Garden Road, Avondale, Pennsylvania 19311.  United was an EMMC member during the Relevant Time Period and participated in the unlawful conduct alleged herein.

33.     Defendant John Pia was one of the founders and president of the EMMC and is the Chief Executive Officer of Kaolin, which is one of the EMMC's members.

34.     Defendant Michael Pia is an individual citizen and resident of the state of Pennsylvania.  Michael Pia was an officer of the EMMC and as such was directly responsible for its anticompetitive practices.

35.     Defendants JOHN DOES 1-100 are unidentified individuals and/or entities that were members of the EMMC and/or co-conspirators of the Defendants during the Relevant Time Period.

## JURISDICTION AND VENUE

36.     This action is brought under Sections 4 and 16 of the Clayton Act, 15 U.S.C. § 15, 26, to recover treble damages, equitable relief, and costs of suit, including reasonable attorneys' fees, for injuries to Publix in the form of overcharges resulting from Defendants' violations of Sections 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1, 2, as alleged herein.

37.     This Court has jurisdiction over the subject matter of this civil action pursuant to 28 U.S.C. §§ 1331, 1337 and 15 U.S.C. § 15.

38.     Venue is proper in this Court under 28 U.S.C. § 1391 and 15 U.S.C. § 22 because: (i) Defendants transact business, committed an illegal or tortuous action, and/or are found within this district; and (ii) a substantial portion of the affected trade and commerce described below has been carried out in this district.

## INTERSTATE TRADE AND COMMERCE

39.     Agaricus mushrooms are the common table variety, which account for the vast majority of mushrooms grown and sold in the United States.  In 2002, domestic sales of all mushrooms were over $800 million, with the vast majority being the common table mushroom known as the agaricus or "white button" mushroom (agaricus bisporus).  In fact, in 1995 the

United States Department of Agriculture classified 99% of all mushrooms grown in the United States as agaricus.

40.     During all or part of the Relevant Time Period, Defendants grew and sold substantial amounts of agaricus mushrooms in a continuous and uninterrupted flow of commerce across state lines and throughout the United States.

41.     At all material times, agaricus mushrooms grown and sold by Defendants were shipped across state lines and sold to customers located outside its state of manufacture.

42.     During all or part of the Relevant Time Period, Defendants transmitted funds as well as contracts, invoices and other forms of business communications and transactions in a continuous and uninterrupted flow of commerce across state and national lines in connection with the sale of agaricus mushrooms.

43.     Defendants employed, in furtherance of their agreement not to compete and market allocation scheme, the United States mails and interstate and international telephone lines, as well as means of interstate and international travel.

44.     The illegal agreement not to compete and to suppress competition for agaricus mushrooms alleged herein has substantially affected interstate and foreign commerce.

## DEFENDANTS' UNLAWFUL CONDUCT

45.     Shortly after its formation, in January 2001, the EMMC and its members agreed to set increased minimum prices at which they would sell fresh mushrooms in six different geographic regions, covering the entire continental United States.  The minimum prices they agreed to were higher, on average, than the prices prevailing in those regions prior to the EMMC's formation.  The price increases resulted in an increase of the price of agaricus mushrooms during the Relevant Time Period.

46.     In order to support and maintain the artificial price increases, the Defendants eliminated competing mushroom supply, which could otherwise force down the artificially-increased prices.  Within three months of instituting the price increases, the Defendants launched a campaign to control the mushroom supply by acquiring and subsequently dismantling non-EMMC mushroom growing operations.  These actions did not serve, nor were they intended to serve, any legitimate or lawful purpose.  The actions described in paragraphs 46 & 47 are otherwise referred to as the "Supply Control Campaign."

47.     Mushrooms are grown on farms, usually in one story cinder block buildings known as "doubles."  Doubles are kept cool and dark at an optimum ground temperature of 64 degrees year round. Mushrooms are grown in stacks of beds, usually six beds to a stack and 24 beds to a double.  Once harvested, mushrooms are usually kept in refrigerated storage on the farms until packaged and shipped in refrigerated trucks to customers.

48.     Depending on the size and location, building a new mushroom growing and production facility costs millions of dollars and generally requires zoning approval.  Building a new facility takes much longer to generate any revenue than purchasing or leasing an existing growing operation.  By eliminating the existing available productive capacity, the Defendants substantially reduced and impeded the existence of current competition and substantially forestalled and delayed the entry of new competitors and/or the expansion of existing competitors.

49.     Through membership dues and a "Supply Control Assessment" the EMMC collected approximately $6 million from its members during 2001 and 2002.  EMMC, acting as an agent of its members, then spent approximately $3 million to purchase four mushroom farms and to acquire lease options on two additional mushroom farms in the eastern United States for

the purpose of shutting them down and reducing the mushroom production capacity available for nonmembers to grow mushrooms in competition with the Defendants.

50.     In May 2001, the EMMC purchased a farm in Dublin, Georgia at a bankruptcy auction. The Dublin farm had an annual mushroom production capacity of approximately eight million pounds. At the auction, the EMMC outbid a non-EMMC mushroom grower based in Colorado that was attempting to enter mushroom farming in the eastern United States in competition with EMMC. Three months later, the EMMC entered into a land exchange with a land developer not connected to the mushroom industry in which the EMMC exchanged the Dublin farm for another mushroom farm consisting of two parcels in Evansville, Pennsylvania plus cash. As part of the exchange, the EMMC placed a permanent deed restriction on the Dublin farm prohibiting the conduct of any business related to the growing of mushrooms. The EMMC lost approximately $525,000 on the Dublin farm purchase and exchange transactions.

51.     Within three months of the Dublin farm/Evansville land exchange, the EMMC sold the largest parcel of the Evansville, Pennsylvania farm to a third party with a permanent deed restriction prohibiting the conduct of any business related to the growing of mushrooms. Less than a year later, the EMMC sold the second parcel with the same permanent deed restriction. The two parcels making up the Evansville, Pennsylvania farm, with an annual mushroom growing capacity of 15 million pounds, were sold at a collective loss of $137,000.

52.     In January 2002, the EMMC purchased Gallo's Mushroom Farm ("Gallo's"), in Berks County, Pennsylvania. Gallo's had an annual mushroom growing capacity of two million pounds. Less than four months later, the EMMC sold Gallo's at a loss of $77,500 with a permanent deed restriction prohibiting the conduct of any business related to the growing of mushrooms.

53.     In February 2002, the EMMC agreed to pay $1 million to the owners of Ohio Valley Mushroom Farms for, among other things, a non-compete agreement, a right of first refusal to lease the mushroom growing operations, a right of first refusal to purchase the properties, and the right to record a deed restriction on the Ohio Valley Farm, which had previously operated as a mushroom growing concern with annual capacity of nine million pounds.

54.     In March 2002, the EMMC purchased the La Conca D'Oro mushroom farm in Berks County, Pennsylvania. The La Conca D'Oro farm had an annual production capacity of approximately five million pounds. The EMMC sold the farm and the mushroom-growing equipment on the farm approximately three months later at a loss of $500,000. Like the other EMMC acquired properties, this land was sold with a deed restriction prohibiting anyone from conducting any business related to the growing of mushrooms on the property.

55.     In August 2002, the EMMC purchased a ten-year lease option on the Amadio Farm in Berks County, Pennsylvania for $230,000. The Amadio Farm had an annual mushroom production capacity of approximately five million pounds. The owner of the property agreed with the EMMC to the filing of a deed restriction on the property prohibiting anyone other than the EMMC from conducting any business related to the growing of mushrooms for ten years. EMMC never entered into a lease on the property.

56.     As a result of the deed restrictions placed by the EMMC on these six mushroom farms in the eastern United States, the EMMC removed more than 42 million pounds of annual growing capacity from that region or approximately 8% of the total capacity in the eastern United States.

57.     In addition to the farms in Pennsylvania, Georgia and Ohio, the Defendants also implemented the Supply Control Campaign to buy mushroom farms to restrict mushroom production in other states.  For example, as part of its Supply Control Campaign, the EMMC acquired a farm in Hillsborough, Texas, which the EMMC purchased to reduce and forestall the threat of a competitor, Stuart Thomas, from producing mushrooms in Texas.  As a result of the EMMC's actions in various states, the EMMC eliminated at least 50 million pounds of mushroom supply, if not more.  The EMMC touted the success of the Supply Control Campaign to its membership, claiming it had "[a]nnually taken over 50 million pounds out of production from facilities which could have easily been purchased and remained in production."

58.     The Defendants' purpose in entering into the purchase and lease transactions was to reduce or eliminate the agaricus mushroom growing capacity available to potential independent competitors in the United States.  The Defendants thereby improved their ability to maintain the artificially-inflated price increases to which they had agreed.  Moreover, these land purchases and lease/option agreements did not, nor were they intended to, serve any legitimate or lawful purpose under the Capper-Volstead Act such as the promotion of growing or marketing the Defendants' mushrooms.

59.     In addition to the property transactions and deed restrictions to restrain mushroom supply alleged above, the EMMC members supported and reinforced their scheme by: (a) collectively interfering with any non-EMMC growers that sought to sell at prices that were below the artificially-inflated prices set by the EMMC; and (b) using collective and conspiratorial acts to pressure independent growers to join the EMMC and the Defendants' anticompetitive scheme.  Publix's investigation into the EMMC's actions to restrict competition continues.

60.    In the mushroom-growing industry, growers frequently sell fresh mushrooms to each other to fill daily needs.  Because the EMMC members control over 60% of the national mushroom supply, and approximately 90% of the mushroom supply in the Eastern United States, the EMMC members were able to use their collective strength to place pressure on non-EMMC members to force independent growers to join the EMMC cooperative (and thus the anticompetitive scheme) or to refrain from selling mushrooms at lower prices that would undermine the scheme.  The EMMC members applied such pressure and coercion through various means, including, but not limited to, threatening and/or implementing a group boycott in which they would not sell mushrooms to other growers who needed them to meet short term supply needs and/or selling mushrooms to such independent growers at inflated levels.

61.    Through the collective boycotts and other collective efforts to penalize non-EMMC members that threatened to undermine the Defendants' anticompetitive scheme, the Defendants caused the artificial inflation of prices for not only the fresh agaricus mushrooms that the Defendants sold, but also for the fresh agaricus mushrooms sold by non-EMMC growers.

62.    As a result of the EMMC's violations, the acreage and facilities available to produce mushrooms for American consumers was artificially reduced and consumers were deprived of the benefits of competition.

63.    The EMMC is organized pursuant to Capper-Volstead Act ("Capper-Volstead"), 7 U.S.C. § 291 *et seq*.  Under Capper-Volstead, farmers have limited immunity from the antitrust laws to act together voluntarily in "collectively processing, preparing for market, handling and marketing" their products and "may take the necessary contracts and agreements to effect such purposes."  Capper-Volstead provides no immunity, however, for cooperative members to

conspire to prevent independent, nonmember farmers from competing with the cooperative or its members.

64.     The Supply Control Campaign is not a joint activity protected by the exemption from the antitrust laws created by Capper-Volstead.

### GOVERNMENT INVESTIGATION

65.     On December 16, 2004, the United States Department of Justice filed a complaint against the EMMC, styled *United States of America v. Eastern Mushroom Marketing Cooperative, Inc.*, Civil Case No. 2: 04-CV-5829 (the "DOJ Complaint") in the United States District Court for the Eastern District of Pennsylvania challenging EMMC's Supply Control Campaign as an agreement in restraint of trade in violation of Section 1 of the Sherman Act. That same day, the Department of Justice filed a proposed consent decree that requires EMMC to stop buying mushroom farms only to shut them down, and to make farms it had previously shut down available to competing farmers. That Final Judgment was subsequently entered on September 9, 2005. Pursuant to 15 U.S.C. § 16(a), entry of that Final Judgment does not impair this action.

### EFFECTS OF ANTICOMPETITVE CONDUCT

66.     During the relevant period, Publix purchased substantial amounts of agaricus mushrooms directly from the Defendants. As a result of Defendants' illegal conduct, Publix was compelled to pay, and did pay, artificially inflated process for agaricus mushrooms.

67.     The overall effect of Defendants' unlawful agreement was to allow Defendants to charge a higher price for agaricus mushrooms by constricting supply.

68.     Those prices were substantially greater than the prices that Publix would have paid absent the illegal conduct alleged herein, because: (1) the price of agaricus mushrooms were

artificially inflated by Defendants' illegal conduct; and/or (2) Publix was deprived of the opportunity to purchase competitively priced agaricus mushrooms.

69.    As a consequence, Publix has sustained substantial losses and damage to their business and property in the form of overcharges.  The full amount and forms and components of such damages will be calculated after discovery and upon proof at trial.

### FRAUDULENT CONCEALMENT

70.    Throughout the relevant period, Defendants affirmatively concealed their unlawful conduct from Publix.  Publix did not discover, and could not discover through the exercise of reasonable diligence, that Defendants were violating the antitrust laws as alleged herein until approximately December 2004, when the Justice Department announced that it had filed a civil complaint against the EMMC and that EMMC had consented to entry of a final judgment against it.  Nor could Publix have discovered the violations earlier than that time because Defendants and their co-conspirators conducted their conspiracy in secret, concealed the nature of their unlawful conduct and acts in furtherance thereof, attempted to confine information concerning the identities of the combination and conspiracy's membership and concealed from public scrutiny their activities through various other means and methods designed to avoid detection.

71.    Defendants and their co-conspirators affirmatively concealed the existence of the violations alleged through the following actions, among others:

      a.    Conducting non-public meetings and communications in which the Defendants agreed upon and implemented the scheme alleged herein;

      b.    Avoiding references or discussion in public documents of the identities of the EMMC's membership and the anticompetitive scheme and acts alleged herein;

    c.      Participating in non-public meetings and conversations to monitor and enforce adherence to the conspiracy; and

    d.      Falsely representing that EMMC members' prices were fair and competitive.

72.    As a result of Defendants' concealment, Publix asserts the tolling of any applicable statute of limitations affecting the rights of action of Publix.  Publix exercised due diligence to learn of its legal rights, and, despite the exercise of due diligence, did not discover and could not have discovered the antitrust violations alleged above at the time they occurred.

73.    As a result of Defendants' continuing violations of federal antitrust laws and the speculative nature of the damages to Publix, Publix asserts the tolling of the applicable statute of limitations with respect to any claim or right of action that Publix has as a result of the unlawful conduct, combination and conspiracy alleged herein.

## COUNT I

**Restraint of Trade in Violation of Section 1 of the Sherman Act 15 U.S.C. § 1**

74.    Publix repeats and realleges all preceding paragraphs of this Complaint as if fully set forth herein.

75.    From at least January 1, 2001, and continuing through the filing of this Complaint, the Defendants combined and conspired to restrain competition in the market for agaricus mushrooms in the United States in violation of 15 U.S.C. § 1.

76.    To form and effectuate this conspiracy, EMMC and its members did the following things, among others:

    a.   collectively funded the Supply Control Campaign;

    b.   bought multiple properties which were resold at a loss with permanent deed restrictions forbidding the conduct of any business related to the production of mushrooms;

    c.    entered into agreements with nonmembers to place deed restrictions on properties for which the cooperative purchased lease options; and

    d.    filed deed restrictions on the lease-option properties prohibiting the conduct of any business related to the production of mushrooms for ten years; and

    e.    supported and reinforced the scheme by: (i) collectively interfering with, penalizing and retaliating against any non-EMMC growers that sought to sell at prices that were below the artificially-inflated prices set by the EMMC; and (ii) using collective and conspiratorial acts to pressure independent growers to join the EMMC and the Defendants' anticompetitive scheme.

77.    As set forth herein, Defendants have used their illegal conspiracy and unlawful market power to suppress competition and harm Publix by enacting an overarching, illegal scheme to affect, fix, raise, maintain and/or stabilize at artificial and non-competitive levels, the prices of agaricus mushrooms that were sold, distributed or obtained in the United States. Through this illegal conduct, Defendants have violated Section 1 of the Sherman Act.

78.    These illegal practices of Defendants have resulted in continuing and accumulating harm to Publix by allowing Defendants to affect, fix, raise, maintain and/or stabilize at artificial and non-competitive levels the prices at which agaricus mushrooms were sold, distributed or obtained in the United States. The continuing and accumulating harm suffered by Publix specifically includes being overcharged for agaricus mushrooms as a result of Defendants' conspiracy.

79.    The Supply Control Campaign and the other unlawful conduct alleged herein are not joint activities that are protected by the exemption from the antitrust laws created by Capper-Volstead.  Under Capper-Volstead farm cooperatives are not immune from antitrust liability when they engage in exclusionary practices, or suppress competition with non-members, which is what Defendants did here.  By eliminating mushroom supply from non-EMMC members,

and/or using collective efforts to penalize non-EMMC members that charged lower prices, the Defendants suppressed competition from growers that were not members of the cooperative.

80.     There was not a legitimate business justification for the scheme and conspiracy among Defendants.  Defendants' scheme, collusion, agreements and conspiracy alleged herein have enabled Defendants to maintain prices for agaricus mushrooms at artificially high levels.

81.     As a direct and proximate result of the unlawful conduct of Defendants in restraining competition in the sale of agaricus mushrooms, Publix has been injured in their business and property in that they paid more for agaricus mushrooms than they otherwise would have paid in the absence of Defendants' unlawful conduct.

## COUNT II

### Conspiracy to Monopolize in Violation of Sherman Act Section 2

82.     Publix repeats and realleges all preceding paragraphs of this Complaint as if fully set forth herein.

83.     From at least January 1, 2001, and continuing through the filing of this Complaint, the Defendants combined and conspired to monopolize the market for agaricus mushrooms in the United States in violation of 15 U.S.C. § 2.

84.     The combination and conspiracy to monopolize this market has been effectuated by, inter alia:

   a.   collectively funding the Supply Control Campaign;

   b.   buying multiple properties which were resold at a loss with permanent deed restrictions forbidding the conduct of any business related to the production of mushrooms;

   c.   entering into agreements with nonmembers to place deed restrictions on properties for which the cooperative purchased lease options; and

    d.   filing deed restrictions on the lease-option properties prohibiting the conduct of any business related to the production of mushrooms for ten years; and

    e.   supporting and reinforcing the scheme by: (i) collectively interfering with, penalizing and retaliating against any non-EMMC growers that sought to sell at prices that were below the artificially-inflated prices set by the EMMC; and (ii) using collective and conspiratorial acts to pressure independent growers to join the EMMC and the Defendants' anticompetitive scheme.

85.    As set forth herein, Defendants have used their illegal conspiracy and unlawful market power to suppress competition and harm Publix by enacting an overarching, illegal scheme to affect, fix, raise, maintain and/or stabilize at artificial and non-competitive levels, the prices of agaricus mushrooms that were sold, distributed or obtained in the United States. Through this illegal conduct, Defendants have violated Section 2 of the Sherman Act.

86.    As a result of Defendants' conduct, the Defendants controlled prices, have excluded competitors and competition and are able to charge supra-competitive prices in the agaricus mushroom market.

87.    Acts of monopolization or conspiracy to monopolize such as those of Defendants are not activities that are protected by the exemption from the antitrust laws created by the Capper Volstead Act, 7 U.S.C. § 291, *et seq.* Under the Capper Volstead Act, farm cooperatives are not immune from antitrust liability when they engage in exclusionary practices, monopolize trade or suppress competition with non-members, which is what Defendants did here. By eliminating mushroom supply from non-EMMC members, and/or using collective efforts to penalize non-EMMC members that charged lower prices, the Defendants suppressed competition from growers that we not members of the cooperative.

88.    There was no legitimate business justification for the willful acquisition, maintenance, and/or attempted acquisition or maintenance of monopoly power by Defendants.

Defendants' scheme, collusion, agreement and conspiracy alleged herein has enabled Defendants to maintain prices for agaricus mushrooms at artificially high levels.

89.    As a direct and proximate result of the unlawful conduct of Defendants in conspiring to monopolize the market for agaricus mushrooms, Publix has been injured in its business and property in that it paid more for agaricus mushrooms than it otherwise would have paid in the absence of Defendants' unlawful conduct.

## REQUEST FOR RELIEF

**WHEREFORE**, Publix respectfully requests:

A.    That the EMMC's unlawful conspiracy as alleged in Counts I-II of this Complaint be adjudicated and decreed a *per se* violation of the Sherman Act, 15 U.S.C. §§ 1, 2;

B.    That Publix  recovers damages against all Defendants, including EMMC, Robert A. Ferranto Jr. t/a Bella Mushroom Farms, Brownstone Farms, Inc. and/or Brownstone Mushroom Farm, To-Jo Fresh Mushrooms, Inc., Cardile Mushrooms, Inc., Cardile Bros. Mushrooms Packaging, Inc., Country Fresh Mushroom Co., Forest Mushrooms, Inc., Franklin Farms, Inc., Gino Gaspari & Sons, Inc., Gaspari Mushroom Co., Inc. and/or Gaspari Bros. Inc., Giorgio Mushroom Co. and/or Giorgio Foods, Inc., Kaolin Mushroom Farms, Inc., South Mill Mushroom Sales, Inc., LRP-M Mushrooms LLC, LRP Mushrooms, Inc., and/or Leone Pizzini & Son, Inc., Modern Mushroom Farms, Inc., Sher-Rockee Mushroom Farm, LLC, C&C Carriage Mushroom Co., Oakshire Mushroom Farm Inc., Phillips Mushroom Farms, Inc., Harvest Fresh Farms, Inc., Louis Marson, Jr., Inc., Mario Cutone Mushroom Co., Inc., M.D. Basciani & Sons, Inc., Monterey Mushrooms, Inc., Masha & Toto, Inc. t/a M&T Mushrooms, W & P Mushroom Inc., Mushroom Alliance, Inc., Creekside Mushrooms, Ltd., Kitchen Price Mushrooms, Inc., JM Farms, United Mushroom Farms Cooperative, Inc. and/or United Mushroom Farms Coop, In.c,

John Pia, Michael Pia and John Does1-100, in an amount to be trebled in accordance with the antitrust laws pursuant to 15 U.S.C. § 15(a);

C.     That Publix be awarded its expenses and costs of prosecuting this action, including reasonable attorneys' fees and experts' fees and costs to the extent provided by law;

D.     That Publix be awarded pre-judgment and post-judgment interest at the highest legal rate from and after the date of service of this Complaint to the extent provided by law;

E.     That this Court permanently enjoin all continuing and future unlawful activity by the Defendants in violation of the antitrust laws; and

F.     That Publix be awarded such additional relief as this Honorable Court may deem just and proper.

## JURY TRIAL DEMANDED

Pursuant to Fed. R. Civ. P. 38(b), Publix demands a trial by jury of all of the claims asserted in this Complaint so triable.

Dated: May 8, 2006          **TRUJILLO RODRIGUEZ & RICHARDS, LLC**

                   **By:**   _Kathryn C. Harr_
                             Ira Neil Richards
                             Kathryn Harr
                             1717 Arch Street
                             Suite 3838
                             Philadelphia, PA  19103
                             T: (215) 731-9004
                             F: (215) 731-9044

                             Joseph M. Vanek
                             David P. Germaine
                             Vanek, Vickers & Masini, PC
                             111 S. Wacker Drive, Suite 4050
                             Chicago, Illinois 60606
                             Tel: (312) 224-1500
                             Fax: (312) 224-1510
                             **Attorneys for Publix**