IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE MUSHROOM DIRECT | : | Master File NO. 06-0620 |
| PURCHASER ANTITRUST | : | |
| LITIGATION | : | NOS.  06-0638; 06-0657; |
| | : | 06-0677; 06-0861; |
| THIS DOCUMENT RELATES TO: | : | 06-0932; 06-1464; |
| All Actions | : | 06-1854 |

O'NEILL, J.                                                                                           January 31, 2012

## MEMORANDUM

Plaintiffs, a class of direct purchasers of mushrooms, allege that mushroom producers who were members of the Eastern Mushroom Marketing Cooperative engaged in antitrust violations including price-fixing, causing plaintiffs to pay artificially inflated prices for the mushrooms that they purchased during the class period.  Now before me are Direct Purchaser plaintiffs' motion to compel non-party Basciani Foods, Inc. to produce documents responsive to a subpoena and BFI's motion to quash the subpoena.  For the reasons set forth below, I will grant plaintiffs' motion to compel, subject to the conditions set forth below.  I will deny BFI's motion to quash the subpoena.

## BACKGROUND

BFI was never a member of the EMMC, the organization whose members' alleged activities form the basis of plaintiffs' antitrust claims.  However, BFI was the exclusive distributor of mushrooms grown by defendant M.D. Basciani & Sons, Inc., who was a member of the EMMC from its inception until 2004.  BFI and M.D. Basciani are owned by identical owners, each holding the same percentage share in BFI as their share in M.D. Basciani.  Michael Basciani Dep., Dkt. No. 389, Ex. D at 25:10-21.  Michael Basciani is the Vice President of both M.D.

Basciani and BFI. Id. at 7:22-25, 26:2-8. At the deposition of Michael Basciani as the corporate designee for M.D. Basciani, he testified that M.D. Basciani is a corporate entity distinct from BFI with its own bank accounts, financial statements and assets, board of directors meetings, annual shareholder meetings and payrolls. Id. at 18:17-19; 25:22-26:19; 106:16-25. M.D. Basciani admitted, however, that there may have been occasions when BFI wrote checks to the EMMC to pay annual dues or special assessments owed by M.D. Basciani. Id. at 86:21-88:5; see also M.D. Basciani Resp. to Pls.' First Set of Interrogs., Dkt. No. 389, Ex. G at 14 ("$440,000.00 was paid out of [BFI's] credit line to pay for [M.D. Basciani's] contribution to pay for a land purchase through the EMMC."). M.D. Basciani also testified that BFI had to try to follow the EMMC's minimum pricing policy, Michael Basciani Dep., Dkt. No. 389, Ex. D at 77:1-77:16, and only entered into contracts to purchase mushrooms from growers who were members of the EMMC (although it purchased some mushrooms without contracts from non-EMMC members), id. at 186:16-187:6.

Plaintiffs contend that they previously sought from M.D. Basciani transactional sales data for mushroom sales made by M.D. Basciani through BFI. In their memorandum in support of their motion, plaintiffs assert that M.D. Basciani told plaintiffs "that it did not have any such data because all of its mushrooms were sold by [BFI]." Dkt. No. 389 at 4. However, in a December 15, 2011 letter to the Court, M.D. Basciani contends that in September 2007 and in May 2008 it provided plaintiffs with a total of "over 2,874 documents that contain, among other things, its records of mushroom sales and pricing information, i.e. date of sale, type of mushroom, pounds sold and amount." Dkt. No. 393 at 1. M.D. Basciani further notes that "at no time during the nearly six year existence of this case have plaintiffs moved to compel M.D. Basciani & Sons, Inc.

to respond to any discovery in this matter." Id.

Apparently unsatisfied with the information received from M.D. Basciani, plaintiffs served a subpoena on non-party BFI on October 6, 2009. BFI moved to quash the subpoena (Dkt. No. 333) and I granted its motion by Order dated December 4, 2009 (Dkt. No. 357), finding that, at the time, plaintiffs sought the subpoenaed information for use in a mediation proceeding. I concluded that plaintiffs were not prevented from seeking a new subpoena for information from BFI upon the conclusion of the mediation. Accordingly, on March 23, 2010, plaintiffs served BFI with a subpoena that was substantively identical to the 2009 subpoena. BFI filed its pending motion to quash the subpoena on May 7, 2010 (Dkt. No. 366), before a stay of proceedings imposed by the Court of Appeals. Upon remand from the Court of Appeals, plaintiffs contacted BFI to discuss the subpoena. According to plaintiffs, BFI remained unwilling to make a substantive response to the subpoena. Plaintiffs filed their pending motion to compel BFI's response on November 22, 2011 (Dkt. No. 388).

In its motion to quash, out of Plaintiffs' eleven requests for production of documents, BFI objects to the following nine:

> 1. Documents, in computer readable form if available, sufficient to show Your daily sales of Mushrooms to each of Your customers, including customer name and address, EMMC region, date of sale, product sold, unit selling price, any discount, net unit price, quantity sold, and total price.
>
> 2. Documents, in computer readable form if available, sufficient to show Your daily purchases of Mushrooms from each seller, including seller name and address, EMMC region, date of purchase, product purchased, unit purchase price, any discount, net unit price, quantity purchased, and total price.
>
> 3. Documents relating to Mushroom price increases, including all

> Communications and Documents used to notify Your customers of such price increases.
>
> 4. For the period 1999 through 2008 in any geographic territory, documents Relating to Your actual or estimated share of Mushroom sales or the actual or estimated share of Mushroom sales of all EMMC members individually or collectively.
>
> 5. Documents sufficient to show: (a) the total dollar value of Mushrooms sold by You for each year beginning 1999 through 2008; (b) the total pounds of Mushrooms sold by You for each year beginning 1999 through 2008; (c) Your top ten customers by revenue generated by You from Mushrooms sold to each of Your top ten customers for each year beginning 1999 through 2008; (e) the top ten grades (e.g. 10 lb medium, 10 lb sliced, 10 lb food service, etc.) of Mushrooms sold by dollar value by You for each year beginning 1999 through 2008; (f) the revenue generated for You by each of the top ten selling Mushroom grades for each year beginning 1999 through 2008.
>
> 6. Any periodic report, profit and loss statement or similar statement of analysis that sets forth any or all of the following information: (a) revenues; (b) cost of goods sold; (b) expenses; or (c) earnings generated by You during the period 1999 through 2008.
>
> 9. Documents sufficient to show all legal and business relationships between You and M.D. Basciani & Sons, Inc.
>
> 10. All price lists for mushrooms that You sold during the period 1999 through 2008.
>
> 11. All documents relating to or reflecting the process by which Your selling prices for mushrooms were determined during the period 1999 through 2008.

Pls.' Mem. Ex. A. Plaintiffs contend that the documents they have sought to discover from BFI are relevant to a core issue in this case – the sales made by M.D. Basciani through BFI at prices set by the EMMC. Plaintiffs assert that they "need the pricing and volume data sought to demonstrate the Basciani entities' adherence to the pricing policies set by the EMMC and to

calculate damages." Dkt. No. 389 at 9.  They contend that the profit and loss data requested is "relevant to establishing and testing the financial impact of the prices set by EMMC." Id. at 10. Plaintiffs further contend that information relevant to BFI's market share "would be relevant should it be necessary for Plaintiffs to establish market power as part of their liability case." Id. at 9-10.  Finally, plaintiffs assert that information pertaining to the legal and business relationships between BFI and M.D. Basciani "is particularly relevant in light of [BFI's] present assertion that it has no relation to this case." Id. at 10.

BFI contends that the information sought includes trade secret and confidential research, development or commercial information, as well as competitively sensitive and proprietary information.  Dkt. No. 366-1 at 3.  BFI also asserts that at least twenty-one of the parties to this litigation are its direct competitors.  Dkt. No. 366-1 at 3.  Finally, BFI estimates that there are at least 1.8 million pages of documents that are responsive to plaintiffs' requests.  Dkt. No. 366-1 at 5; see also Richard A. Basciani, Jr. Supp. Aff., Dkt. No. 352, Ex. A. at ¶¶ 8, 11, 12.  BFI has previously estimated that the cost to copy responsive information would be in excess of $490,000.  Dkt. No. 352, Ex. B.  Plaintiffs contend that this estimate exceeds the market rate and have indicated a willingness "to arrange for pick up and copying of the documents at Plaintiffs' expense." Dkt. No. 389 at 14.

## DISCUSSION

While "the scope of discovery under the Federal Rules is . . . broad, this right is not unlimited and may be circumscribed." Bayer AG v. Betachem, Inc., 173 F.3d 188, 191 (3d Cir. 1999).  "A non-party may seek from the court protection from discovery via the overlapping and interrelated provisions of both Rules 26 and 45" of the Federal Rules of Civil Procedure.

Mannington Mills, Inc. v. Armstrong World Indus., Inc., 206 F.R.D. 525, 529 (D. Del. 2002). In applying Rules 26 and 45, I must balance several competing factors: "(1) relevance, (2) need, (3) confidentiality, and (4) harm." Id. at 529. "[E]ven if the information sought is relevant, discovery is not allowed where no need is shown, or where compliance is unduly burdensome, or where the potential harm caused by production outweighs the benefit." Id.; see also Rule 26(b)(2)(C).

BFI argues that it should not be required to produce the documents requested in the Direct Purchaser Plaintiffs' subpoena because the documents: (1) may be available from M.D. Basciani, a party-defendant to the litigation; (2) are not relevant to plaintiffs' underlying claims or defenses; (3) contain highly confidential information; and (4) are voluminous, such that their production would create a significant burden for BFI.

**I.      Need: Availability from Other Sources**

I find that plaintiffs have sufficiently demonstrated their need for the requested documents. This is not a case where plaintiffs have made no attempt to obtain the requested information from other sources. C.f. Spartanburg Reg'l Healthcare Sys. v. Hillenbrand Indus., Inc., No. 05-107, 2005 WL 2045818, at *5 (W.D. Mich. Aug. 24, 2005) ("[T]hat there exists no evidence that Hillenbrand has made any attempt to obtain the requested information from any source other than Steelcase significantly undermines its claim of need."); Echostar Commc'ns Corp. v. News Corp. Ltd., 180 F.R.D. 391, 395 (D. Colo. 1998) ("until Echostar has exhausted its efforts to seek production of these types of [confidential] materials from News Corp., and until Echostar has, at least, completed some depositions, it cannot even begin to argue that it has a substantial need to obtain the [confidential] materials from the non-parties"). Plaintiffs served

substantially similar document requests on a defendant – M.D. Basciani – and M.D. Basciani responded by serving plaintiff with responsive documents.  A plaintiff seeking to discover information from a third-party is not required to compel defendants to produce potentially overlapping information before seeking any third-party discovery.  This is particularly true where, as here, the defendant with potentially overlapping information has already produced documents in response to the overlapping discovery requests.

BFI contends that it has at least 1.8 million pages of responsive documents.  In contrast, M.D. Basciani has produced 2,874 responsive documents to plaintiffs.  Plaintiffs may require BFI's responsive documents "not only to supplement [M.D. Basciani's production] but also to test the veracity of [M.D. Basciani's] assertions that they have produced all the documents they are required to produce."  Med. Tech. Inc. v. Breg, Inc., No. 10-00100, 2010 WL 3734719, at *4 (E.D. Pa. Sept. 21, 2010).  Further, it is likely that BFI possesses relevant documents that M.D. Basciani does not.  C.f. Columbus Drywall and Insulation, Inc. v. Masco Corp., No. 06-0034, 2006 WL 2871834, at *2 (S.D. Ohio Sept. 25, 2006) (declining to quash third party subpoena in an antitrust matter, recognizing that "information from a non-party participant in the market may, from a tactical standpoint, present advantages in the litigation not easily realized from parties or experts").

**II.     Relevance**

BFI contends that the documents sought by plaintiffs are not relevant to the determination of any claims in the instant litigation. Dkt. No. 391 at 6.  I disagree.  The facts and circumstances of a case determine and limit the relevancy of information sought in discovery.  Cont'l Access Control Sys., Inc. v. RacalVikonics, Inc., 101 F.R.D. 418, 419 (E.D. Pa. 1983).  Discovery need

not be confined to matters of admissible evidence but may encompass that which "appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1). see also Oppenheimber Fund, Inc. v. Saunders, 437 U.S. 340, 352 (1978) (Relevancy is "construed broadly to encompass any matter that bears on, or that reasonably could lead to another matter that could bear on any issue that is or may be in the case."). Because the precise boundaries of the Rule 26 relevance standard will depend on the context of the particular action, the determination of relevance is within the Court's discretion. Bowman v. Gen. Motors Corp., 64 F.R.D. 62, 69 (E.D. Pa. 1974). "It is a generally accepted rule that standards for non-party discovery require a stronger showing of relevance than for party discovery." Zukoski v. Phila. Elec. Co., No. 93-4780, 1994 WL 637345, at * 3 (E.D. Pa. Nov. 14, 1994). In this matter this rule is counterbalanced by the "general policy of allowing liberal discovery in antitrust cases." Am. Health Sys., Inc. v. Liberty Health Sys., No. 90-3112, 1991 WL 30726, at *2 (E.D. Pa. 1991); see also Callahan v. A.E.V. Inc., 947 F. Supp. 175, 179 (W.D. Pa. 1996) (citations omitted) ("Discovery in an antitrust case is necessarily broad because allegations involve improper business conduct. . . . Such conduct is generally covert and must be gleaned from records, conduct, and business relationships.").

Plaintiffs need not allege that BFI is or has been a member of the EMMC in order for the requested information to fall within the boundaries of relevance under Rule 26. As BFI is a distributor of mushrooms and purchased mushrooms from members of the EMMC, the information plaintiffs seek to discover is clearly relevant in that it either directly pertains to or may lead to information that supports or refutes plaintiffs' claims regarding the impact of the

defendants' activities on the prices of mushrooms sold or distributed in the United States.[1]

### III.     Confidentiality:  Confidential Business Information

BFI asserts that the plaintiffs' subpoena is an "attempt to improperly extract irrelevant, highly confidential trade secret information from a non-party – information which will then be disseminated to Defendants, many of whom are BFI's fiercest competitors." BFI Mem. at 1. Rule 45(c)(3)(B)(i) provides for the protection of "trade secrets or other confidential research, development, or commercial information. Fed. R. Civ. P. 45(c)(3)(B)(i); see also Fed. R. Civ. P. 26(c)(7) (allowing the court to issue an order "requiring that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specific way"). To show that the information at issue is subject to protection under Rule 45(c)(3)(B)(I), BFI "must show, with specificity, that disclosure will work a clearly defined and serious injury to the moving party." Composition Roofers Union Local 30 Welfare Trust Fund v. Graveley Roofing Enters., Inc.,160 F.R.D. 70, 72 (E.D. Pa. 1995); see also Gabe Staino Motors, Inc. v. Volkswagen of Am., Inc., No. 99-5034, 2003 WL 25666135, at *3 (E.D. Pa. Feb. 28, 2003) (same).

I recognize that BFI has a legitimate concern relating to the confidentiality of its business information, including sales data, pricing methodology, market share and customer lists. Yet BFI makes only conclusory allegations that it would be injured as a result of disclosing the requested

---

[1] To the extent that the requests numbered 1 and 2 do not limit the relevant time frame for the documents to be produced, I find that BFI's responses to such requests should be limited to the period from 1999 through 2008. Further, requests 1, 2, 4 and 5 seek potentially duplicative information. BFI need not create any new documents summarizing the raw sales and purchase data responsive to requests 1 and 2 in order to respond to requests 4 and 5 which seek, inter alia, market share and revenue data . To the extent that documents containing such summarized information already exist, BFI must produce them to plaintiffs.

information. In the affidavit produced by BFI to support its claim that it will be harmed by the production of the information sought, it asserts only that disclosure of responsive documents "could result in substantial loss of revenue for [BFI] because it would allow competitors to have an unfair advantage over [BFI] in the marketplace." Richard A. Basciani, Jr. Aff., Dkt. No. 333-2 at ¶ 8. BFI provides no explanation as to how the information requested, now between four and fourteen years old, might, in today's marketplace, be used to BFI's detriment by the identified party-competitors. "[B]lanket and generalized assertions of confidentiality, absent allegations regarding specific harm, are not sufficient to sustain a motion to quash." Cash Today of Texas, Inc. v. Greenberg, No. 02-77, 2002 WL 31414138, at *3 (D. Del. Oct. 23, 2002) (internal quotation and citation omitted).

    Even if BFI's allegations were sufficient to support a finding that it would be injured by production of the requested information, I find that the Stipulation and Order Governing the Production and Exchange of Confidential Material dated May 29, 2007 (Dkt. No. 122) provides adequate protection for the information that BFI must produce in response to plaintiffs' subpoena and I will order that the parties to this discovery dispute comply with its provisions. The Confidentiality Order provides that parties may designate documents as "Confidential" or "Highly Confidential." Documents designated as "Confidential" include those that contain "trade secrets or other confidential, non-public research, development, or commercial information, the disclosure of which would work a clearly defined and serious injury to the party." Dkt. No. 122 at ¶ 2. Documents may be designated as "Highly Confidential" if they contain "current trade secrets or highly sensitive strategic planning, commercial planning or price planning information or any other highly sensitive information of current significance, the

disclosure of which would cause a clearly defined and serious injury to the producing party." Id. at ¶ 3.  A producing party may also mark individual items of Highly Confidential material as "Highly Confidential – For Attorney's Eyes Only," meaning that they are to be produced only to outside counsel for the parties and not divulged to the parties or to their in-house counsel. Id. at ¶ 5(iv).

BFI argues that I must quash the supboena under the rationale set forth in In re: ANC Rental Corp., No. 02-148, 2002 U.S. Dist. LEXIS 12260, at *4-6 (E.D. Pa. June, 20, 2002).  In ANC Rental, the Court found that the confidential commercial information of a non-party would not be adequately safeguarded by a protective order, noting that the non-party would not be present at all proceedings, the parties to the litigation had no incentive to protect the confidentiality of the information and the interests of the non-party "would undoubtedly be subordinate to those of the parties who would be present." Id. at *5.  I find that ANC Rental is not dispositive here.  First, other Courts have found that similar protective orders are sufficient to protect discovery of confidential business information.  See, e.g., Medical Tech. Inc. v. Breg, Inc., No. 10-00100, 2010 WL 3734719, at *5 (E.D. Pa. Sept. 21, 2010) (declining to quash third-party subpoenas on the basis that they sought production of highly confidential information where the requested documents would be subject to a protective order providing "that all documents designated as 'confidential' or 'highly confidential' are to be produced 'for attorney's eyes only' and not divulged to the parties themselves"); Blaylock v. Allstate Ins. Co., No. 06-1456, 2007 WL 2253500 (M.D. Pa. Aug. 3, 2007) ("since injury is determined by what might happen under an appropriate protective order, and [defendant] agrees that disclosure may be limited to [defendant's] attorneys and not [defendant] itself, this last factor [– whether the need

-11-

for the information outweighs the injury that might be caused by disclosure –] counsels in favor of requiring [third-party] discovery"). Further, this Court has enforcement power over the Confidentiality Order and could protect BFI's interests should there be a breach of its terms. C.f. In re: Vitamins Antitrust Litig., 267 F. Supp. 2d 783, 742 (S.D. Ohio 2003) (finding a confidentiality order was insufficient to safeguard third-party's confidential information where the Court had no enforcement power of the relevant order).

Finally, in the event that BFI has a good faith belief that particular documents are not adequately protected under the Confidentiality Order, even if designated as "Highly Confidential – For Attorney's Eyes Only," in lieu of production, I will allow BFI to supply the plaintiffs and the Court with a log describing any such documents and the basis for any claimed need for additional protection. Plaintiffs may lodge any objections to the designation of any documents as requiring additional production using the procedures set forth in Paragraph 11 of the Confidentiality Order. If BFI decides to file a motion with the Court to confirm the confidentiality of the documents not produced, it shall produce any such documents to the Court for in camera review so that the Court may make a determination as to whether BFI must produce the documents in question.

## IV.   Harm:  Burden of Compliance

Rule 45 requires the Court to protect non-parties from "significant expense resulting from the inspection and copying commanded." Fed.R.Civ.P. 45(c)(2)(B). Because plaintiffs have indicated their willingness to pay for the cost of copying documents produced by BFI, Dkt. No. 389 at 14, I will require that Plaintiffs compensate BFI for the costs of copying the subpoenaed documents. Id. BFI, however, seeks more than its copying costs. BFI contends that its "business

operations would be disrupted during the weeks it will take for counsel to inspect the documents and for the copying to be completed." Dkt. No. 390-1 at 18. It also asserts plaintiffs must address the "significant attorneys fees which BFI would incur to review the documents prior to production." Id.

As for any costs that may be incurred in the gathering and assembly of the documents, including attorney's fees, I make no ruling at this time. In deferring my ruling on this question, I note that "the required '[p]rotection from significant expense does not mean that the requesting party necessarily must bear the entire cost of compliance. . . . [A] non-party can be required to bear some or all of its expense where the equities of a particular case demand it.'" In re Law Firms of McCourts, No. M19–96, 2001 WL 345233, at *1 (S.D.N.Y. Apr. 9, 2001), quoting In re Exxon Valdez, 142 F.R.D. 380, 383 (D.D.C.1992); see also Wells Fargo Bank, N.A. v. Konover, 259 F.R.D. 206, 207 (D. Conn. 2009) (same). "When a party from whom documents are sought is not a 'classic disinterested non-party,' . . . the court can order that the non-party produce the documents at its own expense." In re Seroquel Prods. Liab. Litig., No. 06-1769, 2007 W: 4287676, at *3 (M.D. Fla. Dec. 6, 2007), citing In re First Am. Corp., 184 F.R.D. 234, 241-42 (S.D.N.Y. 1998); see also Software Rights Archive, LLC v. Google Inc., No. 09-017, 2009 WL 1438249, at *2 (D. Del. May 21, 2009) ("[I]t is relevant to inquire whether the putative non-party actually has an interest in the outcome of the case."); Wells Fargo, 259 F.R.D. at 207 (rejecting request for cost shifting where the supoenaed non-party had a common ownership interest with a party to the litigation); Behrend v. Comcast Corp., 248 F.R.D. 84, 86 (D. Mass. 2008) (requiring non-party to bear costs of compliance where it had a clear interest in the outcome of the litigation).

Plaintiffs and BFI are directed to cooperate to minimize the costs of retrieval and duplication, while providing documents with reasonable dispatch.

An appropriate Order follows.