# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| GIANT EAGLE, INC., | : | |
|     Plaintiff, | : | CIVIL ACTION |
| v. | : | |
| | : | |
| EASTERN MUSHROOM MARKETING | : | |
| COOPERATIVE, et al., | : | No. 06-3523 |
|     Defendants. | : | |
| _____ | | |
| PUBLIX SUPER MARKETS, INC., | : | |
|     Plaintiff, | : | CIVIL ACTION |
| v. | : | |
| | : | |
| EASTERN MUSHROOM MARKETING | : | |
| COOPERATIVE, et al., | : | No. 06-932 |
|     Defendants. | : | |

## MEMORANDUM

**Schiller, J.**                                                                                         **February 21, 2020**

On February 14, 2020, this Court denied Certain Defendants' motion in limine to preclude testimony and other evidence regarding Defendants' Supply Control Plan at trial. This memorandum explains the Court's reasoning.

## I.     BACKGROUND

Plaintiffs have accused certain players in the market for fresh agaricus mushrooms of violating antitrust law. Plaintiffs claim that Defendants incurred antitrust liability in three ways. First, Plaintiffs accuse Defendants of conspiring to set the price at which mushroom distributors would sell to buyers. Second, Plaintiffs accuse Defendants of bid rigging reverse internet auctions in which supermarkets select mushroom providers to supply them with mushrooms. Finally, and most importantly here, Plaintiffs accuse Defendants of engaging in a "Supply Control Plan" whereby Defendants conspired to buy mushroom farms and place deed restrictions on them to

1

prevent future mushroom growing, thus reducing the overall mushroom supply. According to Plaintiffs, the combined effect of this conduct inflated the price of fresh agaricus mushrooms above competitive levels, leading Plaintiffs to pay inflated prices.

Plaintiffs support the claim that Defendants' actions resulted in overcharge with a report by Dr. Keith Leffler. The Court has previously outlined Dr. Leffler's qualifications and the particulars of his analysis, which "are based on two multi-variable regression analyses, one for each opt-out plaintiff, which attempt to isolate and quantify the impact caused by and damages resulting from defendants' policies on mushroom prices." *In re Mushroom Direct Purchaser Antitrust Litig.*, Civ. A. No. 06-0620, 2015 WL 5775600, at *1 (E.D. Pa. Aug. 5, 2015). What is important for the purpose of the instant motion is this: Dr. Leffler did not analyze the effect of Defendants' alleged Supply Control Plan on the price Plaintiffs paid for mushrooms.

In his analysis, Dr. Leffler did not include a variable to account for farm closure, a choice he justified by claiming that the mushroom farm closures occurring during the relevant time period were endogenous to other control variables. (Mot. to Preclude, Ex. C. 78:24-80:3 and Ex. D. 44:25-45:6.) As a result, Dr. Leffler's calculations do not show how much, if at all, Defendants' Supply Control Plan impacted the price of fresh agaricus mushrooms. (Rebuttal Expert Report of Keith B. Leffler, Ph.D. on Behalf of Public Supermarkets, Inc. and Giant Eagle Inc. [Rebuttal Report] at ¶ 6 n.6) ("[I] did not specifically estimate any overcharge from EMMC's purchase-deed restriction actions."); (*id.*) ("[I] have estimated no separate impact of the purchase-deed restriction conduct.") Because Plaintiffs have not made the Court aware of any other evidence tending to prove, through any sort of analysis, the effect of the Supply Control Plan on the price of fresh agaricus mushrooms, for the purpose of this motion, the Court finds that Plaintiffs have not shown that the Supply

Control Plan resulted in overcharge.

Here, Defendants ask the Court to conclude that, because Plaintiffs cannot show that the Supply Control Plan resulted in overcharge, Plaintiffs should be precluded from putting on any evidence regarding the Supply Control Plan. For the reasons that follow, the Court rejects this request.

## II. DISCUSSION

Defendants put forth two arguments for why evidence of the Supply Control Plan should be excluded: it is irrelevant and, in the alternative, its probative value is substantially outweighed by the risk of prejudice.[1] Neither argument is persuasive.

### A. Relevance

Defendants argue that evidence of the Supply Control Plan is irrelevant. Evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without evidence" and "the fact is of consequence in determining the action." Fed. R. Evid. 401. "[T]he threshold for relevance is low." *Thomas v. Dragovich*, 142 F. App'x 33, 37 (3d Cir.2005). Here, evidence of the Supply Control Plan is relevant to Defendants' antitrust liability in two ways.

First, evidence of the Supply Control Plan is relevant to whether Defendants incur liability for their price control and reverse internet auction policies under the rule of reason. Whether or not an antitrust defendants' conduct was undertaken for the purpose of constraining trade is

---

[1] Defendants' brief also contains sections arguing (A) Plaintiffs are estopped from offering evidence that the Supply Control Plan "affected mushroom supply, otherwise had an anticompetitive effect, or caused plaintiffs any alleged damages", and (B) "expert testimony would be required to support any claim that the Supply Control Campaign caused plaintiffs any damages, and Plaintiffs have offered no such testimony with respect to the supply control campaign." However, neither serves as an independent basis to exclude evidence of the Supply Control Program – rather they are reasons that (according to Defendants) evidence of the Supply Control Plan should be excluded pursuant to Rules 402 and 403 of the Federal Rules of Evidence. As such, the Court evaluates the central claim of these sections – that Plaintiffs cannot show the Supply Control Plan affected the price of fresh agarics mushrooms – in the context of determining whether evidence relating to the Supply Control Plan is admissible under Rules 402 and 403.

3

relevant to whether that conduct is unreasonable under a rule of reason analysis. As the Supreme Court observed in *Chicago Board of Trade v. United States*:

> The true test of [challenged conduct's] legality is whether the restraint imposed is such as merely regulates and perhaps thereby promotes competition or whether it is such as may suppress or even destroy competition. To determine that question the court must ordinarily consider the facts peculiar to the business to which the restraint is applied; its condition before and after the restraint was imposed; the nature of the restraint and its effect, actual or probable. The history of the restraint, the evil believed to exist, *the reason for adopting the particular remedy, the purpose or end sought to be attained, are all relevant facts*. This is not because a good intention will save an otherwise objectionable regulation or the reverse; *but because knowledge of intent may help the court to interpret facts and to predict consequences*.

246 U.S. 231, 238 (1918) (emphasis added). In this case, if it is true that Defendants undertook a plan to reduce the supply of mushrooms, and did so with the intent of maintaining artificially high prices, those facts would have a tendency to make it more probable that the price control and reverse internet auction policies were also undertaken with the intent of restraining competition, which is relevant to whether such policies constitute unreasonable restraints of trade. This is true even if Plaintiffs cannot show that Defendants Supply Control Plan was successful. Thus, evidence of the Supply Control Plan is relevant because it is probative of whether the price control and reverse internet auction policies violated antitrust law.

Second, evidence of the Supply Control Plan is relevant to whether Defendants are *per se* liable for violations of the Sherman Act. Defendants who engage in conduct that *per se* violates the Sherman Act are liable regardless of the actual effects of their conduct. *United States v. Socony-Vacuum Oil Co.*, 310 U.S. 150, 224 n.59 (1940) ("It is the 'contract, combination or conspiracy, in restraint of trade or commerce' which § 1 of the Act strikes down, whether the concerted activity be wholly nascent or abortive on the one hand, or successful on the other."); *In re Flat Glass*

*Antitrust Litig.*, 385 F.3d 350, 363 (3d Cir. 2004) ("But a horizontal agreement to fix prices need not succeed for sellers to be liable under the Sherman Act; it is the attempt that the Sherman Act proscribes."); *see* Christopher R. Leslie, *Hindsight Bias in Antitrust Law*, 71 Vand. L. Rev. 1527, 1579-82 (2018). In this case, "plaintiffs' claim that the supply control program violated Section 1 of the Sherman Act is . . . subject to *per se* antitrust liability" *In re Mushroom Direct Purchaser Antitrust Litig.*, Civ. A. No. 06-0620, 2015 WL 6322383, at *16 (E.D. Pa. May 26, 2015). As such, evidence regarding the Supply Control Plan is relevant to their liability even if Plaintiffs cannot show the Plan resulted in overcharge. Thus, evidence regarding Defendants' Supply Control Plan is relevant.

**B. Rule 403**

Defendants argue in the alternative that, even if evidence of the Supply Control Plan is relevant, it should nonetheless be excluded because its probative value is substantially outweighed by the risk of undue prejudice. Their argument is unavailing.

Under Rule 403, courts have discretion to exclude relevant evidence if the evidence's probative value is substantially outweighed by the danger of "unfair prejudice, confusing the issues, misleading the jury, undue delay, waste of time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. When weighing the Rule 403 factors, courts "must appraise the genuine need for the challenged evidence and balance that necessity against the risk of prejudice to the defendant." *United States v. Bailey*, 840 F.3d 99, 118–19 (3d Cir. 2016). Evidence can be kept out only if its unfairly prejudicial effect *substantially* outweighs its probative value. *Id.* at 119.

Here, it is not clear how introduction of evidence regarding the Supply Control Plan would

5

result in any of the harms Rule 403 seeks to avoid, and, to the extent that any such harms would occur, there is no basis to conclude that they would substantially outweigh the evidence's probative value. As such the Court declines to find evidence of Defendants' Supply Control Plan inadmissible under Rule 403.

## III. CONCLUSION

For the foregoing reasons, this Court denied Certain Defendants' motion to categorically exclude all evidence of Defendants' alleged Supply Control Plan at trial.